IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 2, 2014 Session

## GENE LOVELACE ENTERPRISES, LLC ET AL. V. CITY OF KNOXVILLE

**Appeal from the Circuit Court for Knox County**
**Nos. 2-391-05 & 2-494-05      Harold Wimberly, Judge**

_____

**No. E2013-01584-COA-R3-CV-FILED-DECEMBER 15, 2014**

_____

This case involves the enforceability of an ordinance enacted by the City of Knoxville to impose licensing requirements for owners and employees of sexually oriented businesses. Plaintiffs, Gene Lovelace Enterprises, LLC a/k/a Last Chance Theatre & Musical Club 2000 at Alcoa Highway and Eugene Lovelace d/b/a Bambi's,[1] filed this action against the City, seeking a judgment declaring the ordinance unconstitutional and an injunction prohibiting enforcement.  A similar action was subsequently filed by plaintiffs, Business Financial Services of Knoxville, Inc. d/b/a West Knoxville News and Katch One, Inc. d/b/a Katch One Lounge.  The two cases were consolidated.  The City filed a motion for summary judgment, asserting that the City Council had appropriately enacted the ordinance to combat negative secondary effects caused by sexually oriented businesses.  The plaintiffs presented evidence that there were no negative secondary effects associated with such businesses in the Knoxville area, including expert opinions and a study based on empirical data from the relevant locality.  The trial court granted summary judgment to the City, finding that "relevant authorities cited by the City establish that the ordinance in question is of a type which may be validly and constitutionally enacted by a municipality such as defendant." Gene Lovelace Enterprises, LLC and Bambi's LLC have appealed that ruling.  We reverse the trial court's grant of summary judgment to the City and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and D. KELLY THOMAS, JR., Sp. J., joined.

_____

[1]Mr. Lovelace died during the pendency of these proceedings, and Bambi's LLC was substituted as a party.

Arthur G. Seymour, Jr., and Matthew A. Grossman, Knoxville, Tennessee, for the appellants, Gene Lovelace Enterprises, LLC a/k/a Last Chance Theatre & Musical Club 2000 at Alcoa Highway, and Bambi's LLC.

Scott D. Bergthold, Stephen S. Duggins, and Bryan A. Dykes, Chattanooga, Tennessee, for the appellee, the City of Knoxville.

**OPINION**

I. Factual and Procedural Background

In late 2003, the City's adult business location ordinances were struck down as unconstitutionally vague by this Court in *City of Knoxville v. Entm't Resources, LLC*, No. E2002-01143-COA-R3-CV, 2003 WL 22762195 at *7 (Tenn. Ct. App. Nov. 21, 2003). That decision was affirmed by our Supreme Court in *City of Knoxville v. Entm't Resources, LLC*, 166 S.W.3d 650 (Tenn. 2005). Thereafter, the City enacted both a location ordinance and a licensing ordinance to regulate sexually oriented businesses.[2] The licensing ordinance at issue requires that any person operating a sexually oriented business possess a sexually oriented business license granted by the City. Further, any person employed by such an establishment must also have a license. The ordinance defines "employ, employee, and employment" as "any person who performs any service on the premises of a sexually oriented business, on a full time, part time, or contract basis, whether or not the person is denominated an employee, independent contractor, agent, or otherwise."

These ordinances were presented to the Metropolitan Planning Commission ("MPC") for its approval prior to being placed before the City Council ("Council"). The MPC voted to deny recommendation regarding the licensing ordinance. The licensing ordinance was subsequently placed on the Council's agenda. The Council held discussions regarding the ordinance and considered numerous documents in support of the ordinance submitted by the City's retained outside counsel, Scott Bergthold. Those documents included court opinions regarding adult businesses and the regulation thereof, reports and studies from other cities regarding the negative secondary effects of adult businesses, periodical articles, and police reports from other localities. The ordinance was approved by the Council in May 2005.

Following enactment of the ordinance, the instant action was filed by Gene Lovelace Enterprises, LLC a/k/a Last Chance Theatre & Musical Club 2000 at Alcoa Highway and Bambi's LLC ("Plaintiffs"), and other adult businesses to challenge the validity of the

_____

[2]The plaintiffs did not challenge the location ordinance as their existing businesses were determined to be "grandfathered" by the City.

ordinance. Their claim was that the City Council's decision to pass the ordinance was based on "shoddy" or misleading information provided by attorney Bergthold. The City filed an answer and counter-claim, seeking a judgment declaring the ordinance constitutional.

The City filed a motion for summary judgment in March 2010. Plaintiffs sought and were granted additional time for discovery following the filing of the motion for summary judgment. Plaintiffs deposed Dr. Larry Miller and filed an affidavit from him, as well as two other expert affidavits regarding the alleged inaccuracy of the information provided to the Council in general and as applied to the City of Knoxville. Plaintiffs subsequently sought to depose the City's retained outside counsel, Scott Bergthold. The City filed a motion for a protective order, and the court granted the motion based on "immunities and privileges claimed." On December 5, 2012, the court granted summary judgment to the City. Plaintiffs timely appealed.[3]

## II. Issues Presented

Plaintiffs present the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred by granting summary judgment to the City.

2.      Whether the trial court erred by failing to consider Plaintiffs' contention that enactment of the subject ordinance was invalid and ineffective due to unmet procedural requirements.

3.      Whether the trial court erred by applying intermediate scrutiny analysis to the ordinance rather than strict scrutiny analysis.

4.      Whether the ordinance is facially overbroad and invalid due to its definition of "employee."

5.      Whether the trial court erred by granting a protective order to prevent Plaintiffs from deposing attorney Bergthold.

_____

[3]The other adult businesses that were plaintiffs in the original action did not join in this appeal.

### III. Standard of Review

Our Supreme Court has succinctly described the applicable[4] standard of review of a trial court's grant of summary judgment:

> A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). "The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

*Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013).

Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has recently instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

Review of a trial court's grant of a protective order is performed utilizing an abuse of discretion standard. *See Summers v. Cherokee Children & Family Servs., Inc.*, 112 S.W.3d 486, 530 (Tenn. Ct. App. 2002). "The burden of establishing abuse of discretion is

---

[4]The recently enacted Tennessee Code Annotated § 20-16-101 (Supp. 2014) is applicable only to cases commenced on or after July 1, 2011, and therefore is not applicable to this case. Tennessee Code Annotated § 20-16-101 provides a standard of review for summary judgment with the stated purpose "to overrule the summary judgment standard for parties who do not bear the burden of proof at trial set forth in *Hannan v. Alltel Publishing Co.*, its progeny, and the cases relied on in *Hannan.*" *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011).

on the party seeking to overturn the trial court's ruling on appeal." *Id.*

## IV. Summary Judgment

### A. Sufficiency of Order

During oral argument, Plaintiffs questioned whether the trial court's order granting summary judgment complied with our Supreme Court's recent directive in *Smith*, 439 S.W.3d at 316, regarding summary judgment orders. In *Smith*, the Supreme Court elucidated that when ruling on a motion for summary judgment, the trial court must "state the grounds for its decision before it invites or requests the prevailing party to draft a proposed order." *Id*. (citing Tenn. R. Civ. P. 56.04). The stated purposes behind this requirement are to (1) ensure that the decision is the trial court's, (2) assure the parties that the trial court independently considered their arguments, (3) enable the reviewing courts to ascertain the basis for the trial court's decision, and (4) promote independent and logical decision-making. *Id*.

Based on our review of the trial court's order granting summary judgment in this case, we conclude that the court properly complied with the requirement set forth in *Smith*. After reviewing the parties' briefs and all submitted documentation regarding summary judgment, the trial court stated in its own order granting summary judgment to the City:

> Plaintiffs in these consolidated cases challenge certain ordinances of the City of Knoxville which concern licensing and conduct of sexually oriented businesses. The City has moved for summary judgments. The Court having reviewed the pleadings, motions, responses, replies and the entire record before it finds there are no genuine issues of material fact and the City is entitled to summary judgment in each case as a matter of law.

> Specifically, plaintiffs' contentions in these cases that the ordinance in question was enacted as a result of misleading, faulty or "shoddy" information provided to the legislative body would not be determinative in these cases since relevant authorities cited by the City establish that the ordinance in question is of a type which may be validly and constitutionally enacted by a municipality such as defendant.

> Accordingly, the Court rules that the ordinance in question is valid and the defendant's motions for summary judgment are granted.

The trial court's order appropriately complies with the indispensable requirement of

*Smith* regarding stated grounds for its decision. *See Smith*, 439 S.W.3d at 316. Moreover, the trial court drafted its own order rather than asking the prevailing party to do so. Following our review, we conclude that the order ensures that (1) the decision is the trial court's, (2) the trial court independently considered the parties' arguments, (3) this Court can ascertain the basis for the trial court's decision, and (4) the trial court exercised independent and logical decision-making. *See id*. Whether the stated grounds are sufficient or form a proper legal basis for granting summary judgment, however, will be discussed in the following section.

## B. Propriety of Grant of Summary Judgment

Plaintiffs assert that the trial court's grant of summary judgment to the City was improper because Plaintiffs provided the trial court with evidence sufficient to create a genuine issue of material fact with regard to the accuracy of the evidence upon which the City relied in enacting the ordinance. Specifically, Plaintiffs contend that the City's evidence, consisting of reports and studies from other cities regarding the negative secondary effects of adult businesses, periodical articles on this topic, and police reports from other localities, were inaccurate or misleading with regard to Knoxville. Plaintiffs presented three expert affidavits that disputed the evidence relied upon by the City, as well as the report of Dr. Larry Miller summarizing a study he conducted based on empirical data from Knoxville. In his report, Dr. Miller concluded that the sexually oriented businesses in Knoxville imposed no adverse secondary effects upon the community.

The City asserts that the Council was provided with United States Supreme Court and other federal court precedent stating that a municipality may rely on studies performed in other cities showing the negative secondary effects of sexually oriented businesses on the community. Further, the City contends that it provided specific evidence of crimes occurring in and around Knoxville adult businesses, proving the negative secondary effects of sexually oriented businesses on Knoxville specifically. In enacting the subject ordinance, the Council found that these businesses are associated with adverse secondary effects, including, *inter alia*, crime, prostitution, spread of disease, obscenity, and drug use. The City argues that it has a substantial government interest in abating these risks. The City also contends that Plaintiffs' presentation of some conflicting evidence regarding the negative secondary effects of adult businesses does not render summary judgment invalid because the City negated an essential element of Plaintiffs' claims by showing that it relied upon evidence reasonably believed to be relevant to the problem.

The City relies upon a seminal United States Supreme Court decision entitled *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), wherein the Court was asked to rule on the constitutionality of a zoning ordinance that prohibited adult motion picture theaters

from locating within 1,000 feet of a residential zone, church, park, or school. The City of Renton had no such theaters within its borders at the time the ordinance was enacted. *Id.* at 44. When considering the ordinance, the Renton City Council reviewed reports from nearby Seattle and other cities regarding adverse secondary effects of such theaters on the surrounding communities. *Id.*

The following year, the plaintiffs acquired two theaters in the area of downtown Renton proscribed by the ordinance with the intent of utilizing them to exhibit adult films. *Id.* at 45. The plaintiffs filed suit challenging the constitutionality of the ordinance. *Id.* The district court granted summary judgment to the City of Renton, but the Court of Appeals for the Ninth Circuit reversed that ruling, finding that the subject ordinance placed a substantial restriction on First Amendment interests. *Id.*

Upon its grant of certiorari to the City of Renton, the United States Supreme Court explained that because the ordinance did not ban adult theaters altogether, but instead merely regulated where such theaters could be located, the district court had properly analyzed the ordinance as a content-neutral time, place, and manner regulation. *Id.* at 46-47. In reversing the Ninth Circuit's decision, the Court explained that such regulations would be deemed constitutional so long as they were designed to serve a substantial government interest and did not unreasonably limit alternative avenues of communication. *Id.* at 50.

The High Court in *Renton* determined that the substantial government interest being served by the ordinance was to prevent negative secondary effects on the community associated with such theaters, such as increased crime and decreased property values. *Id.* The Court noted that the ordinance was enacted without the benefit of studies specifically related to Renton, which was one reason cited by the Ninth Circuit to invalidate it. *Id.* The Supreme Court held that the City of Renton was justified in relying upon studies produced by the City of Seattle, stating:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses. That was the case here.

*Id.* at 51-52. The Court held that the ordinance in question was also "narrowly tailored" to affect only the category of theaters that produced the unwanted secondary effects. *Id.* at 52. The Court thus upheld the ordinance as constitutional. *Id.* at 54.

The City in the instant action relies upon *Renton* as support for its position that in order for the subject ordinance to be deemed constitutional, the City must only demonstrate that the evidence it relied upon in enacting the ordinance was reasonably believed to be relevant to the problem that the City wanted to address, namely the negative secondary effects of such sexually oriented businesses on the surrounding community. Further relevant United States Supreme Court precedent, however, has expounded upon *Renton*'s holding and must also be considered.

In the more recent Supreme Court decision in *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), the Court was asked to determine the constitutionality of an ordinance banning all public nudity within the city limits. The ordinance was challenged by Pap's A.M., which operated an establishment named "Kandyland" that featured nude erotic dancing. *Id.* at 283. The Pennsylvania Supreme Court upheld the validity of the ordinance, and the United States Supreme Court granted certiorari regarding the matter. *Id.* at 287.

The Supreme Court explained that as the ordinance was designed to combat harmful secondary effects unrelated to the suppression of expression, the ordinance would be valid if it satisfied the four-factor test of intermediate scrutiny developed in *United States v. O'Brien*, 391 U.S. 367 (1968), for evaluating restrictions on symbolic speech. Those factors are:

1. whether the ordinance is within the city's constitutional power to enact;
2. whether the ordinance furthers an important government interest:
3. whether the government interest is related to suppression of free expression; and
4. whether the restriction is no greater than is essential to furtherance of the government interest.

*Id.* at 296-300. The Supreme Court reasoned that Erie possessed police powers to protect public health and safety, such that the first factor was satisfied. *Id.* at 296. The Court further found positive support for the third and fourth factors. *Id.* at 300.

When evaluating the second factor regarding whether the ordinance furthered an important government interest, the Court determined that the asserted interest in preventing negative secondary effects upon the community was an important government interest. *Id.* at 296. The Court further determined that the city "need not 'conduct new studies or produce evidence independent of that already generated by other cities'" in order to demonstrate the existence of negative secondary effects, "'so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.'" *Id.* (quoting *Renton*, 475 U.S. at 51-52).

The Court explained:

> In any event, Erie also relied on its own findings. The preamble to the ordinance states that "the Council of the City of Erie *has, at various times over more than a century, expressed its findings* that certain lewd, immoral activities carried on in public places for profit are highly detrimental to the public health, safety and welfare, and lead to the debasement of both women and men, promote violence, public intoxication, prostitution and other serious criminal activity." Pet. for Cert. 6a (emphasis added). The city council members, familiar with commercial downtown Erie, are the individuals who would likely have had firsthand knowledge of what took place at and around nude dancing establishments in Erie, and can make particularized, expert judgments about the resulting harmful secondary effects. Analogizing to the administrative agency context, it is well established that, as long as a party has an opportunity to respond, an administrative agency may take official notice of such "legislative facts" within its special knowledge, and is not confined to the evidence in the record in reaching its expert judgment. Here, Kandyland has had ample opportunity to contest the council's findings about secondary effects—before the council itself, throughout the state proceedings, and before this Court. Yet to this day, Kandyland has never challenged the city council's findings or cast any specific doubt on the validity of those findings. Instead, it has simply asserted that the council's evidentiary proof was lacking. In the absence of any reason to doubt it, the city's expert judgment should be credited.

*Id.* at 297-298 (other internal citations omitted). The Court upheld the ordinance as constitutional. *Id.*

In the more recent decision of *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002), the United States Supreme Court was asked to resolve the question of the constitutionality of a city ordinance prohibiting operation of multiple adult-oriented businesses within a single building. When enacting the ordinance, the City of Los Angeles determined that having multiple adult businesses concentrated in one area was associated with higher crime rates in surrounding communities, based on a 1977 study performed by the city. *Id.* at 429. The city thus enacted an ordinance prohibiting the establishment of such businesses within 1,000 feet of one another. *Id.* In analyzing the propriety of the city's reliance upon the 1977 study, the High Court explained:

> [A] municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial,

independent government interest. This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Id*. at 438-439 (internal citations omitted).

This burden-shifting evidentiary standard developed in *Alameda* was applied by the Court of Appeals for the Sixth Circuit in *Richland Bookmart, Inc. v. Knox County, Tenn.*, 555 F.3d 512 (6th Cir. 2009), wherein the licensing ordinance in question was substantially the same as the ordinance enacted by the City in the case at bar. The ordinance required all owners and employees of sexually oriented businesses to be licensed by the county while additionally regulating the hours of the businesses and prohibiting the sale of alcohol therein. *Id*. at 519. When enacting the ordinance, the county was presented with much of the same evidence presented to the City Council in this case.

Certain sexually oriented businesses challenged the validity of the ordinance in *Richland*, attacking the sufficiency and relevance of the evidence relied upon by the county during enactment of the ordinance. *Id*. at 520. The district court granted summary judgment to the county. *Id*. at 518. Upon appeal, the Sixth Circuit elucidated that the proper analysis of the issue would be to "apply the *O'Brien* test, incorporating evidentiary standards articulated in *Renton* and its progeny." *Id*. at 523-524.

The Sixth Circuit further explained:

The next question is whether the Ordinance serves a substantial government interest. It is now recognized that governments have a substantial interest in controlling adverse secondary effects of sexually oriented establishments, which include violent, sexual, and property crimes as well as blight and negative effects on property values. Plaintiffs argue that the Ordinance does not advance that admittedly important interest and that summary judgment in favor of the County was improper because Plaintiffs adduced facts demonstrating that at least a subset of the businesses regulated by the Ordinance has not in fact generated any adverse secondary effects in Knox

-10-

County. Under *Renton*, the County had to provide "a reasonable evidentiary basis for concluding that its regulation would have the desired effect."

* * *

The Supreme Court and this court have repeatedly held that local governments need not conduct their own studies demonstrating that adverse secondary effects result from the operation of sexually oriented businesses or that the measures chosen will ameliorate these effects. "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." Nor are local governments required to demonstrate empirically that its proposed regulations will or are likely to successfully ameliorate adverse secondary effects. Thus, insofar as Plaintiffs merely dispute the relevance of "foreign" and outdated studies, they fail to create a genuine issue of material fact to survive summary judgment.

This is not to say that, provided that the now-standard list of studies and judicial opinions is recited, no plaintiff could ever successfully challenge the evidentiary basis for a secondary-effects regulation. Albeit light, the burden on the government is not non-existent, and a plaintiff may put forth sufficient evidence to further augment that burden:

> This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in Renton. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Alameda Books*, 535 U.S. at 438-39, 122 S.Ct. 1728. As we have recently noted, the *Alameda Books* plurality thus "set forth a burden-shifting framework governing the evidentiary standard in secondary-effects cases."

-11-

* * *

Because we find that the County met its initial evidentiary burden, only if Plaintiffs succeed in casting "direct doubt" on the County's rationale or factual findings would the County need additional support for its decision to regulate the contested business categories. We conclude that Plaintiffs' efforts to cast such doubt are unsuccessful. Assuming for the sake of argument that the evidence offered by the Plaintiffs is not inadmissible on summary judgment, as the County argues it is, it is of dubious substantive import. Unlike most plaintiffs challenging similar regulations, Plaintiffs do not introduce their own expert findings or studies, but rely on a private investigator and their own or their attorney's summaries of police incident reports and property value assessments. Even if we were to accept this information as authoritative, its probative value is minimal because elementary rules of logic and empirical inference preclude the conclusions Plaintiffs urge.

* * *

Plaintiffs' unsystematic and eclectic collection of information is insufficient to cast direct doubt on the relevance of the evidence relied on by the County, or the County's rationale in enacting the Ordinance. For these reasons, we conclude Plaintiffs did not meet their burden of casting direct doubt on the factual findings or rationale underlying the County's Ordinance.

*Id*. at 524-528 (other internal citations omitted).

The foregoing precedent provides us with the framework by which we must analyze the propriety of the trial court's grant of summary judgment in this action. These prior decisions establish that although the City was justified in utilizing evidence of reports and studies from other cities regarding the potentially adverse secondary effects of adult businesses, this does not end the relevant inquiry. Rather, if the Plaintiffs can successfully cast doubt upon the City's factual findings, the burden shifts back to the City to demonstrate additional evidence to support its theory justifying passage of the ordinance. *See Alameda*, 535 U.S. at 438-39; *Richland*, 555 F.3d at 525.

In the case at bar, the trial court determined that summary judgment should be granted to the City because "relevant authorities cited by the City establish that the ordinance in question is of a type which may be validly and constitutionally enacted by a municipality such as defendant." The court specifically found that "plaintiffs' contentions in these cases that the ordinance in question was enacted as a result of misleading, faulty or 'shoddy'

-12-

information provided to the legislative body would not be determinative." We conclude that the trial court applied an improper legal standard in granting summary judgment to the City. As established by the above precedent, whether the ordinance in question is within the City's constitutional power to enact is only the first factor that the trial court must consider. *See Pap's A.M.*, 527 U.S. at 296. The trial court should also have analyzed the other relevant factors, including whether the ordinance in question serves a substantial government interest. *Id.*; *see also Richland*, 555 F.3d at 524; *City of Cleveland v. Wade*, 206 S.W.3d 51, 57 (Tenn. Ct. App. 2006). In making such a determination, the trial court would be required to consider whether the City relied upon misleading or "shoddy" information when enacting the ordinance. *See Alameda*, 535 U.S. at 438-39; *Richland*, 555 F.3d at 525; *Wade*, 206 S.W.3d at 57.

Because the trial court did not perform the proper analysis in this case as set forth in the foregoing precedent, we reverse the trial court's grant of summary judgment to the City. We remand this action to the trial court for an appropriate analysis utilizing the *O'Brien* test and "incorporating evidentiary standards articulated in *Renton* and its progeny." *See Richland*, 555 F.3d at 524. Specifically, as regarding the second factor of the *O'Brien* test, the trial court must consider whether Plaintiffs' evidence, consisting of expert affidavits as well as a study and report based on empirical data specific to the City of Knoxville, was successful in casting doubt upon the City's factual findings regarding adverse secondary effects on the community. The trial court must apply the proper burden-shifting framework as described in *Alameda* and *Richland* to determine whether the subject ordinance serves a substantial government interest. *See Alameda*, 535 U.S. at 438-39; *Richland*, 555 F.3d at 525.

As the trial court did not address Plaintiffs' other issues raised regarding constitutionality of the ordinance or City legislative procedure, we cannot do so for the first time on appeal. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) (holding that appellate courts are "limited in authority to the adjudication of issues that are presented and decided in the trial courts"); *see also Hayes v. Gentry*, No. 03A01-9303-CH-00120, 1993 WL 191999 at *2 (Tenn. Ct. App. June 8, 1993) ("[S]ince this issue was not adjudicated in the trial court, we cannot consider it on appeal."). Those issues will be directed to the trial court on remand.

## V. Protective Order

The sole remaining issue raised by Plaintiffs that was ruled upon by the trial court is the decision to grant the City a protective order preventing the deposition of attorney Bergthold. Plaintiffs assert that they should have been allowed to depose Mr. Bergthold regarding his "methodology" used in compiling the materials presented to the City Council.

-13-

Plaintiffs argue that the trial court erred in granting a protective order because Mr. Bergthold enjoyed no legislative immunity or attorney-client privilege and because the information sought to be discovered was not protected by the work product doctrine. The City contends that the plaintiffs cannot show an abuse of discretion in the trial court's grant of the protective order.

As previously stated, review of a trial court's grant of a protective order is executed utilizing an abuse of discretion standard. *See Summers*, 112 S.W.3d at 530. Pursuant to the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn.1999)).

Further, as specifically regarding the assertion of a privilege, our Supreme Court has elucidated:

> When a discovery dispute involves the application of a privilege, the court's judgment should be guided by the following three principles. First, Tennessee's discovery rules favor discovery of all relevant, non-privileged information. Second, even though privileges do not facilitate the fact-finding process, they are designed to protect interests and relationships that are regarded as sufficiently important to justify limitations on discovery. Third, while statutory privileges should be fairly construed according to their plain meaning, they need not be broadly construed.

*Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 504 (Tenn. 2010).

When Plaintiffs sought to depose attorney Bergthold in this matter, the City filed a motion for a protective order, asserting legislative privilege and immunity, attorney-client privilege, and the attorney work product doctrine. The trial court granted the protective order, citing "the immunities and privileges claimed," but failed to delineate the specific privilege or immunity forming the basis for the protective order. We determine that the trial court's order is insufficient and does not allow for meaningful review by this Court. *See Heritage Operating, LP v. Henry County Propane Gas, Inc.*, No. W2011-01162-COA-R3-CV, 2012 WL 2989120 at *8 (Tenn. Ct. App. July 23, 2012) (holding that although the trial court maintains discretion regarding discovery orders, the trial court's order must present sufficient findings or reasoning to allow this Court to determine the basis of the trial court's decision). Without sufficient findings or stated reasoning by the trial court detailing the basis

for its grant of a protective order, we cannot determine whether the trial court abused its discretion. As this case is subject to remand for the reasons previously cited, we also vacate the trial court's grant of a protective order and direct that the court further consider this issue and enter an order regarding the motion for protective order that fully explains the basis for its decision.

## VI. Conclusion

For the reasons stated above, we vacate the trial court's grant of a protective order regarding the deposition of Mr. Bergthold. We also reverse the trial court's grant of summary judgment to the City and remand for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellee, the City of Knoxville.

_____
THOMAS R. FRIERSON, II, JUDGE